UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MOSES LANDAU & BARBARA LANDAU,

                  Plaintiffs,

        — against —

SPENUZZA, INC., IMPERIAL MANUFACTURING
COMPANY, IMPERIAL RANGE, IMPERIAL
COMMERCIAL COOKING EQUIPMENT &
WHITE-RODGERS DIVISION OF EMERSON
ELECTRIC CO.,

                  Defendants.
------------------------------------------------------------X

**MEMORANDUM and ORDER**

04-CV-5504 (SLT)(VVP)

**TOWNES, United States District Judge:**

      Plaintiffs Moses and Barbara Landau brought this diversity action against defendants Spenuzza, Inc., d/b/a Imperial Manufacturing Company ("Imperial"), and White-Rodgers, Division of Emerson Electric Co. ("White-Rodgers"), seeking recovery for injuries to Moses Landau and loss of consortium by Barbara Landau. Moses Landau was injured when a deep fryer manufactured by Imperial and containing a gas valve manufactured by White-Rodgers caught fire while he was lighting it. The plaintiffs allege that the White-Rodgers gas valve was defectively manufactured, the Imperial deep fryer was defectively designed, and Imperial failed to provide adequate warnings on the deep fryer. Defendants Imperial and White-Rodgers move for summary judgment.

## BACKGROUND

      Moses Landau was the proprietor of a restaurant in a building owned by Sandor and Shifra Grunwald. The restaurant had a convection oven, a regular oven, a gas grill, and three deep fryers. (Barbara Landau Dep., White-Rodgers Ex. G, at 10). The deep fryer at issue in this

action was first used on June 26 or 27, 2002 (Moses Landau Dep., White-Rodgers Ex. D, at 108), and was used without incident until July 9, 2002, when the restaurant closed for a holiday break (Moses Landau Dep., White-Rodgers Ex. D, at 127–30). During the break, the gas for the equipment and the pilot light of the deep fryer were turned off. (White-Rodgers 56.1 Statement ¶ 11; Moses Landau Dep., White-Rodgers Ex. D, at 127–30).

When the store reopened on July 20, 2002, Moses Landau was injured by a fire that started when he turned on the gas line and lit the deep fryer pilot with an igniter. (Moses Landau Dep., White-Rodgers Ex. D, at 140–142). Believing the pilot light to be an improper color, Landau tested the fryer by turning the temperature to 350 degrees. (Moses Landau Dep., White-Rodgers Ex. D, at 142–43). The oil in the fryer ignited, and Landau was injured by the flames. (Moses Landau Dep., White-Rodgers Ex. D, at 143, 151).

Moses and Barbara Landau brought an action in the Supreme Court of Kings County against their landlords, Sandor and Shifra Grunwald, alleging that the gas lines and gas cooking appliances had been installed improperly and that the premises had been maintained in an unsafe condition. (Complaint, White-Rodgers Ex. H). The plaintiffs submitted an expert report by George Friedell, who concluded that the fire had been caused by improperly installed gas piping. (Friedell Report, White-Rodgers Ex. K, at 2). According to Friedell, the piping was composed of bent and crimped flexible copper tubing instead of rigid or semirigid material, and the deficiency caused a gas leak. (Friedell Report, White-Rodgers Ex. K, at 2–3). The action against the Grunwalds settled for $100,000. (Moses Landau Dep., White-Rodgers Ex. D, at 163–64). The Landaus did not disclose to the defendants in the present action that Friedell had

2

inspected the premises. (Pl. Interrogatory, Imperial Ex. J, ¶¶ 41–44; Barbara Landau Dep., Imperial Ex. K, at 80).

While the action against the Grunwalds was pending, the Landaus filed this action in the Supreme Court of Kings County alleging that (1) White-Rodgers defectively manufactured the gas valve in the deep fryer; (2) Imperial defectively designed the deep fryer; and (3) Imperial failed to provide adequate warnings on the deep fryer. The action was removed to this Court on the basis of the Court's original diversity jurisdiction pursuant to 28 U.S.C. § 1332.

The plaintiffs rely on an expert report by Dr. Donald Lynch, whom they retained to inspect the fryer after it had been moved from the restaurant to a storage facility. (Lynch Report, White-Rodgers Ex. O, at 1–2). Dr. Lynch removed the gas supply and distribution components of the fryer on April 3, 2003, and conducted gas flow tests on the White-Rodgers gas valve on June 27, 2003. (Lynch Report, White-Rodgers Ex. O, at 1). When Dr. Lynch conducted the tests, he initially subjected the gas valve, rated for a pressure of 0.5 pounds per square inch ("psi"), to a pressure of 12.5 psi and adjusted the pressure downward to 0.5 psi for the testing itself. (Lynch Report, White-Rodgers Ex. O, at 3; Lynch Dep., White-Rodgers Ex. E, at 50, 146). The test indicated a small leak in the gas valve. (Lynch Dep., White-Rodgers Ex. E, at 120).

On July 22 and 23, 2003, Dr. Lynch disassembled the gas valve to determine the cause of the leak. (Lynch Report, White-Rodgers Ex. O, at 1). The disassembly of the valve and one of two leak tests was videotaped. (Lynch Aff., ¶ 40). Upon disassembling the gas valve, Dr. Lynch discovered that the elastomeric seal ("flapper") of the valve was stuck in a cocked position. (Lynch Report, White-Rodgers Ex. O, at 4). Dr. Lynch later popped the flapper back into

3

position. (Lynch Dep., White-Rodgers Ex. E, at 65–66). He concluded that the improperly positioned flapper represented a manufacturing defect in the White-Rodgers gas valve. (Lynch Report, White-Rodgers Ex. O, at 5). He also concluded that the Imperial fryer contained two design defects: 1) the lack of a flame shield; and 2) the placement of the thermostat control inside the door of the fryer near the floor, which forced the user to assume a prone position. (Lynch Report, White-Rodgers Ex. O, at 5–6).

## STANDARD OF REVIEW

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "[T]he burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the movant meets this burden, the nonmovant must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); *accord W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990). The nonmovant cannot "'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts,' or defeat the motion through 'mere speculation or conjecture.'" *W. World*, 922 F.2d at 121 (citations omitted). Moreover, the disputed facts must be material to the issue in that they "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary

4

judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)).

**DISCUSSION**

First, New York law applies. Second, this Court does not consider the affidavit of Ernest Niles because the plaintiffs failed to identify Niles as an expert during discovery. Third, the plaintiffs have failed to establish a genuine issue of material fact with respect to the manufacturing defect claim against White-Rodgers, the design defect claim against Imperial, and the failure to warn claim against Imperial.

A.  *Choice of Law*

In a diversity action, this Court applies the choice of law principles of the forum state, in this case New York. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). New York employs an interest analysis, which "gives controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation." *Babcock v. Jackson*, 191 N.E.2d 279, 283 (N.Y. 1963). Here, New York has the most significant interest in this case because it is both the plaintiffs' domicile and the site of the accident.

B.  *Niles Affidavit*

In opposition to the defendants' motions for summary judgment, the plaintiffs submit an affidavit of Ernest Niles, a safety consultant. In his affidavit, Niles opines that Dr. Lynch used proper methods to test the gas valve (Niles Aff., ¶ 14), a remotely controlled thermostat and a flame shield are feasible alternative designs (Niles Aff., ¶¶ 11–13), and a warning about potential flame escape should have been placed on the fryer (Niles Aff., ¶ 18). The defendants argue that

5

the plaintiffs should be precluded from offering the testimony of Niles because the plaintiffs did not produce his testimony during discovery. This Court agrees and declines to consider the Niles affidavit.

Federal Rule of Civil Procedure 26(a)(2)(C) requires that expert testimony be disclosed at the time required by court order. "If a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). A showing of bad faith is not required before evidence may be excluded under Rule 37(c)(1). *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006). Even when no substantial justification exists and the failure to disclose is not harmless, preclusion is not mandatory. *Id.* at 297. Instead, the court has discretion to impose lesser sanctions. *Id.* at 298.

The plaintiffs' failure to disclose Niles as an expert was unjustified. Magistrate Judge Pohorelsky notified the parties as early as March 23, 2005, that failure to make required disclosures could result in the imposition of sanctions (Order of 3/23/05), and he set a discovery schedule on May 23, 2005 (Order of 5/23/05). Magistrate Judge Pohorelsky ordered that expert discovery be completed before the parties requested permission to file a dispositive motion. (Order of 5/19/06). The defendants requested permission to file motions for summary judgment in July 2006, at which time discovery was complete. The plaintiffs, however, did not identify Niles as an expert until April 27, 2007, in their response to the defendants' motions for summary judgment.

The plaintiffs' disregard for the discovery process prejudiced the defendants. Prior to the defendants' motions for summary judgment, the plaintiffs presented no meaningful evidence regarding the design defect and failure to warn claims. As a result, the defendants' motions for summary judgment focused on the plaintiffs' failure to present evidence. Because Rule 37(c)(1) was designed to prevent the "sandbagging" of adverse parties, this Court does not consider the Niles affidavit. *See Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004) (citing *Ventra v. United States*, 121 F. Supp. 2d 326, 331–32 (S.D.N.Y. 2000); *FDIC v. Wrapwell Corp.*, No. 93-CV-859, 2000 WL 1576889, at *2–3 (S.D.N.Y. Oct. 23, 2000); *R.C.M. Executive Gallery Corp. v. Rols Capital Co.*, No. 93-CV-8571, 1996 WL 30457, at *1–2 (S.D.N.Y. Jan. 25, 1996)); *see also Constellation Brands, Inc. v. Arbor Hill Assocs., Inc.*, 535 F. Supp. 2d 347, 367 (W.D.N.Y. 2008); *Arnold v. Krause, Inc.*, 232 F.R.D. 58, 68 (W.D.N.Y. 2004); *Malaco Leaf, AB v. Promotion In Motion, Inc.*, 287 F. Supp. 2d 355, 376 (S.D.N.Y. 2003); *cf. Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062 (2d Cir. 1979).

C.   Manufacturing Defect Claim

Defendant White-Rodgers persuasively argues that the plaintiffs have failed to present evidence sufficient for a reasonable factfinder to conclude that the gas valve was defective. The plaintiffs have introduced no evidence that the overpressurization of the gas valve by Dr. Lynch did not cause the improper positioning of the flapper.

To recover damages for a manufacturing defect under New York law, a plaintiff must establish that the product was defective and that the defect was a substantial factor in causing the injury. *Derienzo v. Trek Bicycle Corp.*, 376 F. Supp. 2d 537, 560 (S.D.N.Y. 2005). "[I]n order to proceed in the absence of evidence identifying a specific flaw, a plaintiff must prove that the

product did not perform as intended and exclude all other causes for the product's failure that are not attributable to defendants." *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 125 (2d Cir. 2006) (quoting *Speller v. Sears, Roebuck & Co.*, 790 N.E.2d 252, 254–55 (N.Y. 2003)) (internal quotation marks omitted).

The plaintiffs provide no basis for a legitimate inference that the flapper was not damaged by the overpressurization by Dr. Lynch. A motion for summary judgment may not be defeated through mere conjecture or speculation. *See McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991)); *Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 155 (2d Cir. 2006). White-Rodgers offers testimony to support the inference that the overpressurization by Dr. Lynch dislodged the flapper. Kevin Kyle, a former White-Rodgers engineer, testified that the flapper of an exemplar gas valve became dislodged when subjected to 12.58 psi (Kyle Aff. at 2–3), and John Schmotzer, director of product safety at White-Rodgers, testified that the gas valve is designed to withstand only 2.5 psi (Schmotzer Aff., Imperial Ex. F, at 86). In contrast, the plaintiffs present no evidence to support the conclusion that the overpressurization did not dislodge the flapper. The opinion of Dr. Lynch that the flapper was improperly positioned before he tested the gas valve (Lynch Dep., White-Rodgers Ex. E, at 157) and the opinion of Niles that Dr. Lynch's methods were reliable (Niles Aff., ¶ 16) are conclusory and cannot serve as the basis for a legitimate inference that the overpressurization did not dislodge the flapper.

The plaintiffs offer an affidavit by Dr. Lynch stating, "I did not over-pressurize the tested equipment at any time." (Lynch Aff., ¶ 22). To the extent that Dr. Lynch denies in his affidavit that he initially subjected the valve to 12.5 psi, as he testified in his deposition, the affidavit is

8

insufficient to defeat summary judgment. "[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. N.Y. City Dep't of Corrs.*, 84 F.3d 614, 619 (2d Cir. 1996) (citing *Perma Res. & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969); *Martin v. City of N.Y.*, 627 F. Supp. 892, 896 (E.D.N.Y. 1985)).

The failure to provide evidence that the overpressurization did not dislodge the flapper is fatal to the plaintiffs' case. First, the plaintiffs offer no other direct evidence that the gas valve was defective. Second, the plaintiffs cannot exclude all other potential causes of the accident. George Friedell, the plaintiffs' expert in their action against the Grunwalds, concluded that the fire had been caused by improperly installed gas piping. (Friedell Report, White-Rodgers Ex. K, at 2). The piping was composed of bent and crimped flexible copper tubing instead of rigid or semirigid material, which Friedell concluded had caused a gas leak. (Friedell Report, White-Rodgers Ex. K, at 2–3). Dr. Lynch was not able to evaluate the gas piping or installation because he examined the fryer after it had been removed from the restaurant. (Lynch Dep., White-Rodgers Ex. E, at 126). The plaintiffs offer no basis, other than speculation, on which to conclude that the fire was caused by the deep fryer or the gas valve rather than the gas piping or installation.

*D. Design Defect Claim*

Defendant Imperial persuasively argues that the plaintiffs have not presented evidence sufficient for a reasonable factfinder to conclude that the deep fryer was defectively designed. Dr. Lynch's testimony and report, on which the plaintiffs rely, are conclusory and do not create a

9

genuine issue of material fact. Furthermore, even if this Court were to consider the Niles affidavit, that affidavit is also conclusory.

To recover damages for a design defect under New York law, a plaintiff must establish that: "(1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing the plaintiff's injury." *Clarke v. LR Sys.*, 219 F. Supp. 2d 323, 330 (E.D.N.Y. 2002) (citing *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125 (2d Cir. 1999); *Voss v. Black & Decker Mfg. Co.*, 450 N.E.2d 204, 207–08 (N.Y. 1983)). In cases involving complex design issues, New York courts require "competent, non-conclusory expert testimony." *Guarascio v. Drake Assocs. Inc.*, 582 F. Supp. 2d 459, 463–64 (S.D.N.Y. 2008). Expert testimony is required in this action because a lay person would not readily understand the design and engineering of a deep fryer, *see id.* at 464, and could not, without the assistance of a design expert, draw a nonspeculative inference that the fryer was defectively designed.

Dr. Lynch concluded that the deep fryer was defectively designed in two ways. First, no barrier protected the user from fire. (Lynch Report, White-Rodgers Ex. O, at 5). The thermostat control was located inside the fryer door, so the door needed to be opened to adjust the thermostat. (Lynch Report, White-Rodgers Ex. O, at 5). Dr. Lynch opined that the problem could be fixed by placing the thermostat control outside the fryer door or by installing a flame shield. (Lynch Report, White-Rodgers Ex. O, at 5). Second, the thermostat control was situated at the bottom of the interior compartment of the fryer, so the head of a user adjusting the thermostat was situated in front of the burner nozzles. (Lynch Report, White-Rodgers Ex. O, at

5). Dr. Lynch opined that the problem could be fixed by placing the thermostat control on the exterior of the fryer. (Lynch Report, White-Rodgers Ex. O, at 5).

Dr. Lynch's conclusions that the fryer was defectively designed are not supported by reasoning or explanation sufficient to survive a motion for summary judgment. He cites no industry standards, and he discusses neither the feasibility of the alternative designs he proposes nor the reasons for the existing design. Dr. Lynch attempts to serve as his own authority, and as a result his opinion lacks a reliable foundation. *See Grdinich v. Bradlees*, 187 F.R.D. 77, 82 (S.D.N.Y. 1999). The following excerpt from Dr. Lynch's deposition illustrates the deficiency in his testimony:

> Q: Have you studied fryers manufactured by other companies?
> A: No, I have not.
> Q: Are you aware of any manufacturers that have a different location for the thermostat?
> A: No, I'm not.
> Q: Have you designed any prototype of a fryer with a thermostat in a different location.
> A: No.
> . . .
> Q: Have you done any analysis of why the thermostat in the fryer was located in the position that it was.
> A: No.
> Q: Have you done any analysis of potential complications that could arise from locating the thermostat in an area other than it was located on the subject fryer?
> A: No.
> . . .
> Q: Have you done any research, of any kind, to find out whether or not any manufacturers of similar types of fryers incorporate a shield into their design?
> A: No.
> Q: Have you considered potential problems that could arise with respect to incorporating a shield, as you propose?
> A: No.
> . . .
> Q: With respect to the alternatives that you . . . propose, have you done any testing to see if they work or present any potential problems to users of the fryer?
> A: No, I — no, I have not.

> . . .
> Q: Have you ever designed . . . a flame shield for a cooking appliance such as a fryer?
> A: No.
> . . .
> Q: And as you sit here today, you're not aware of any manufacturer of cooking appliances and fryers that uses a thermostat in a different location; is that correct?
> A: That's right.
> Q: Are you aware of any standards that govern the subject fryer?
> . . .
> A: I — I'm aware that there are standards from Underwriters Laboratory for electrical devices. And I understand there are standards from the AGA probably involving – American Gas Association. I'm not aware of the specific standards —
> Q: Did you review the standards that may apply?
> A: No. No, I did not.
> . . .
> Q: Is there a fryer on the market today that is designed in the way that you believe Imperial should have designed the fryer?
> A: I have no way of knowing that.
> Q: Have you ever designed or built a prototype of your preferred fryer design?
> A: No.
> . . .

(Lynch Dep., White-Rodgers Ex. E, at 99–109).

Although this Court does not consider the Niles affidavit, that affidavit would not save the plaintiffs from summary judgment even if it were considered. In his affidavit, Niles states that a remotely controlled thermostat and a flame shield are feasible alternative designs. (Niles Aff., ¶¶ 11–13). The Niles affidavit is conclusory and provides insufficient explanation to allow a rational factfinder to conclude that the fryer was defectively designed. The affidavit does not demonstrate knowledge that deep fryers, as opposed to other gas appliances, are sometimes manufactured in the proposed manner, that Niles evaluated the deep fryer with reference to industry standards, or that he considered possible reasons for the design used by Imperial.

The deficiency in the plaintiffs' proof is brought into even sharper relief by the evidence presented by Imperial. Matthew Wise, the general manager of Imperial, explained that the thermostat control is located near the bottom of the fryer because the heat near the top would cause the electronic components of the thermostat control to malfunction. (Wise Dep., Imperial Ex. A, at 53, 56). Wise also explained that a flame shield would limit air flow and impair combustion. (Wise Dep., Imperial Ex. A, at 54). He testified that he is not aware of any manufacturer in the industry that uses a flame shield. (Wise Dep., Imperial Ex. A, at 54). The plaintiffs offer no meaningful evidence to support conclusions to the contrary.

*E.     Failure to Warn Claim*

Defendant Imperial persuasively argues that the plaintiffs have not presented evidence sufficient for a reasonable factfinder to conclude that Imperial negligently failed to warn users of a latent danger. The injuries of Moses Landau were not caused by a lack of adequate warnings.

To recover for a failure to warn, a plaintiff must establish that: (1) the manufacturer had a duty to warn, meaning it knew, or should have known, of latent dangers resulting from intended or reasonably foreseeable unintended uses of the product; and (2) the manufacturer's failure to warn caused the plaintiff's harm. *Santoro ex rel. Santoro v. Donnelly*, 340 F. Supp. 2d 464, 485 (S.D.N.Y. 2004) (citing *Liriano v. Hobart Corp.*, 700 N.E.2d 303, 305 (N.Y. 1998)). Warnings are not required if the danger is open and obvious or if the plaintiff was aware of the risk. *Liriano*, 700 N.E.2d at 308.

The lack of additional warnings about the possibility of fire did not cause the injury to Moses Landau. The warnings on the fryer made clear that lighting the fryer in the presence of gas could cause an explosion or fire. Instructions posted on the fryer warned: "If you do not

13

follow these instructions exactly, a fire or explosion may result causing property damage, personal injury or loss of life." The instructions read: "BEFORE LIGHTING smell all around the appliance area for gas. Be sure to smell next to the floor because some gas is heavier than air and will settle on the floor." Because Landau chose not to follow the instruction to smell around the appliance for gas (Landau Dep., White-Rodgers Ex. D, at 140), Landau was on notice that he was in danger of being injured by a fire.

## CONCLUSION

The defendants' motions for summary judgment dismissing this action are **granted**. The Clerk of Court is directed to close this case.


Dated: Brooklyn, New York
       March 30, 2009

                                              /s/
                                    SANDRA L. TOWNES
                                    United States District Judge